Hello. Good morning. If it pleases the Court, Attorney Paul Paquin for Petitioner, People of the Virgin Islands. I would like to reserve five minutes of my time. Mr. Paquin, in these kinds of cases, it seems to me that there are all kinds of assumptions made about perpetrators and alleged perpetrators, some of them based upon what appear to be common sense deductions, some of them based upon nothing other than speculation and conjecture. Now, that may not matter here, given the Leon standards, but is there anything on the record or during the suppression hearing where Sergeant Joseph asked, was she based her conclusion on that if you have someone with an allegation of Offense A, that person will also engage in Behavior B, and how you draw that correlation between child pornography and child molestation? Is there anything to suggest how she drew that conclusion? Yes, Your Honor. At the time that the suppression hearing, there were actually several cases that in fact dictated that there was a common sense nexus between child molestation and possession of child pornography. First, as the Superior Court noted, in U.S. v. Haines, the 11th Circuit stated that it was a matter of common sense. That's my concern. It's common sense, and that's why I said it may not matter, given the Leon standards. But we make, we people make conclusions all the time which appear to be based on common sense. As one example, and this is far appealed, when I was a trial judge, I initially had a practice of never putting someone into drug rehabilitation unless the person admitted that they were addicted and asked for help, which is about why should I waste a bed on someone who doesn't admit that they're addicted and is not asking for help. All the social science says I was dead wrong, that the chances of drug treatment who says they've got a problem and want help versus someone who denies they've got a problem and don't want any help, the chances of successful intervention are exactly the same. My approach was totally, I thought, common-sensical, and there are still a lot of trial judges who have that view. And that's my concern here, that it may be a common-sense conclusion, but it also may border on the kind of argument that people are making. And in fact, by making the point that you have just made, you have bolstered the argument that the people are making. The bottom line is that there is no consensus on this issue. In Colbert, the Eighth Circuit – Let's just for a second stick with Haynes, if you like, because you've raised Haynes both in argument and in the brief as a justification for this leap of logic, if you will, that the law enforcement officers made. But in fact, Haynes, A, was a non-precedential, unpublished, procuring opinion of the 11th Circuit. And as I think you accurately characterized it, it based its decision only on common sense, did it not? I mean, that was the entire rationale of Haynes, if I recall. If that's so, following up on Chief Judge McKee's question, if it is neither common nor sensible, it can hardly be a reasonable basis upon which a law enforcement officer might make this inferential leap from assuming that because one is a child molester, one is also a collector or possessor of child pornography. Wouldn't that be reasonably so? No, I do not believe that the learned judges of the 11th Circuit Court of Appeals would have simply made a leap without any basis. Well, but they did because in their opinion, there was not a statement in the affidavit to the effect that people who are interested in sexual relations with a minor often have child pornography in the home. That, there's two doubts we never saw. The court just did that on their own. That is correct, but also as you noted, Haynes, that was not an issue that it ruled upon. It was a corollary issue, and I would like to refer to other cases in other circuits which have reached the same conclusion. For example, at the time that the affidavits were issued, the Fifth Circuit in U.S. v. Byrd found that, again, using the term common sense would indicate that persons who are sexually interested in children are likely to also be inclined or predisposed to order or receive child pornography. Mr. Paklin? Yes. Is there any scientific evidence of that proposition that people involved in child abuse have or accumulate pornography? Is there any social science support for that, or is it just the courts are saying that must be so? And was there any reference to social science in the affidavit? I gather you wanted to say that must be so. No, no, no, no. That is not so. In fact, there is a reference to social science, and, in fact, the Supreme Court, when it issued its opinion, it acknowledged that the Supreme Court, in ruling on the constitutionality of state statute prescribing possession of child pornography, the Court recognized that the law was desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexuality, citing one attorney general's commission on pornography, Final Report 649, 1986. That is but one of the reports. Is that a reference to children being used for the production of child pornography? I'm wondering the context of that reference. Yes. It's totally different. The court cited Osborne versus Ohio. And, actually, it was the case that the Supreme Court cited Osborne versus Ohio, and then there's a current federal explanation for Osborne where they say, in ruling on the constitutionality of state statute prescribing possession of child pornography, the Court, meaning the Supreme Court, recognized that the law was desirable, quoting Osborne, because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity. But there's nothing on this statute to suggest that the defendant was trying to seduce other children into the kind of behavior that is suggested in Osborne that might have a corollary with child pornography. Michael, the evidence is to the contrary. There's nothing here to suggest that John was using child pornography to, quoting the VA Supreme Court opinion, seduce other children into sexual activity. That wasn't his conduct at all. He was inappropriately touching them, and he may have been trying to get them to do inappropriate things, criminal things with him, although I don't remember that being any part of the allegation or the record. That wasn't what he was prosecuting for or being investigated for, as I recall, from John's record. But the Osborne statement that the VA Supreme Court relied upon is simply not his case. Just to reflect, do you understand what I'm trying to say? Do you understand my concern with the Osborne quote? Well, you're looking at one case that was in existence at that time, and regardless of whether or not that was the only case, that was not the only case on the issue at that time. You mentioned the VA Supreme Court citation to social science. It's at page 9 of their opinion, and I'm saying that that citation is to the Osborne case, which included a reference to social science. But it's a different kind of social science than we have here. The nexus that was found that just suggested being in existence at Osborne is not the kind of thing that John was alleged to have been doing. Now, again, maybe it won't matter. Maybe under Leon, all that's required is the opposite of what it is, the good faith belief. But the problem I have with that is that if the good faith belief is based upon a reckless conclusion or a reckless assumption, is Leon intended to go that broader? Do you understand what I mean by that? Actually, Your Honor, with all due respect, no, I do not. Okay, let me give you this. Let me give you this now. Let's assume that I'm not black, I'm white, and I'm the biggest racist that ever lived in the face of the earth. And I happen to be a Mississippi state trooper, and it happens to be 1960. And let's assume that I have a practice of stopping every single black person who drives a luxury automobile because I believe that blacks are lazy and shiftless, and the only way they can get a luxury automobile is through criminal activity. Now, I believe that. That's a good faith belief on my part. So the test is a good faith belief. There's absolutely nothing wrong with that going into an affidavit and generating a search warrant that would allow me to stop every black person driving an Audi, an Acura, I guess they didn't have Lexus back then, Cadillac, BMW, based upon my good faith belief in criminal activity. And I'm saying Leon's good faith test can't possibly be intended to sweep that broadly. Leon is a test where they balance social cost with Fourth Amendment liberties. And when the social cost is too high and where there's no deterrent effect, then they say there's no sense using the suppression of evidence. I'm not sure, and I just don't know, and I'm asking you to help me with this, whether or not this is a situation where the deterrent effect should or should not be recognized in the application of the suppression rule because the affidavit is based upon a conclusion which is reckless. But nevertheless, made in good faith. I just don't know the answer to that. Well, I believe that the hypothetical that you presented does not before the court, and I do not believe that it accurately corresponds to the issue before the court. Well, that's why it's a hypothetical. If it was back before the court, it wouldn't be a hypothetical. Well, again, I'm looking at the particular facts of this case, not of a hypothetical. And I do have cases. I do want to hear what you want to answer. I want to hear the case of the answer. Help me with this question. If we would have concluded, not saying we would, but if we were to conclude that the officer's conclusion that went into that affidavit is reckless, that she never, nevertheless believed it in good faith, how do we apply Leon to that concept? Okay. Well, in U.S. v. Houston, that was entered in October of 2010, which relied upon the Eighth Circuit and Colbert, footnote one lists, I will read, aside from the question of its use for probable cause, peer-reviewed literature concerning child pornography and its relation to child pornography would be helpful to sentencing courts given the enhanced possibility of the great wrong and harm of child molestation. Although, as Colbert observed, child pornography often is the recordation and publication of child molestation. And it goes on to list, the site is 2010 W.L. 3949896. Mr. Packwin, may I ask you, based on your argument, based on your theory, every time that someone is accused or charged or arrested for child molestation, does that give automatically, based on your interpretation of the law, a police officer the right to go to the house and search for pornography? I am only saying that in this case, where there is no law that was settled or established on the issue. But I think you're arguing the good faith exception. It is a good faith exception. I'm before that. I'm at the point of the connection. You're saying there is a connection. And my question is, if that's so, if we were to rule here that you are right, that there is a connection between these two things, that means that every police officer in the Virgin Islands will be able to go to a house and search for child pornography because there is a charge of child molestation. I am saying that at this time, there is a disagreement in the circuits and that… I've heard that before. Where is there a circuit opinion that would support what the Second Circuit has called an inferential fallacy of ancient standing? That is what in Falso, then Judge Sotomayor referred to the leap that you would have us make in justifying this search. Where is there – I know you referred to the Haynes case. Haynes does nothing more than refer to a government argument and skips over that and says, we don't have to deal with that effectively because we've got Leon. So where is there in these circuit opinions the kind of support that you've referred to? And my second question, then, is if this is such a reasonable assumption or reasonable inference to draw, where in the warrant is there any reference to a basis for that inference? Because I didn't say it and I'd like to have my attention directed to it. The warrant was based on that it made – it assumed that there is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. Well, here's the agreement that I saw. And again, this is what I want you to show me more of or something else because what I got was this, that persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, photographs, and computer files in their homes and on their computers. Now, there's no challenge to the warrant with respect to evidence of this actual offense of molestation. The challenge is to the warrant's reach, that is, that would permit the search and seizure of child pornography. I don't read this averment as suggesting any more than that a perpetrator of a sexual offense crime involving children would customarily hide evidence, quote, of such offenses there. So where in the warrant is there any basis for this leap, this inferential fallacy, if then Judge Sotomayor is correct in her characterization? Well, Judge Sotomayor, I assume you're relating, you're referring to the Falso case, the Eighth Circuit held. Moreover, to the extent this is United States versus Colbert. 605 F3rd 573. The Eighth Circuit held. Moreover, to the extent that Hudson and Falso suggest that evidence of a defendant's tendency to sexually abuse or analysis respectfully disagree. They went on to say there is an intuitive relationship between acts such as child molestation or inducement and possession of child pornography. And also referred to Fifth Circuit case, U.S. versus Byrd, common sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed to order and receive child pornography. Of course, that means that the normal adult male would be inclined to have pornography on his computer and the normal adult female, whom I'm assuming is interested in, I won't say normal, that's not right. Let's assume that those persons in the adult population who are male, who are interested in females sexually, would likely have pornography on their computers. And those people in the populations who are female, who are sexually interested in males, are likely to have pornography on their computers. That's what that generality would be one to believe, that if a person who is a male is interested in females, as I would assume most males are who are not homosexual, and I do not want to, I just don't want to say this, I don't want to suggest as though being, I'm going to start with abnormal, I'm not saying that at all. I'm simply saying that your generality would suggest that the statistically prevalent male who is interested in females would likely have on his computer at home pornography. Now, that may be true. I doubt very much that it's true. Given the money that Nightingale City takes in, it may be true. The people are not taking a position on either side. The point that the people are attempting to make is that this is an issue that obviously appellate judges, competent appellate judges have disagreed upon. And to hold a police officer to be able to second doubt a judge who granted this warrant based upon the affidavit when you don't even have the circuits of the United States Court of Appeals in agreement is unreasonable. And that the good faith reliance does agree here. I'm not arguing whether one side is right or wrong. I'm only saying there is a disagreement among competent appellate judges, and that is the basis for the good faith reliance that the officer had for the judge granting the warrant for the search. Mr. Paquin, as I recall, this appeal is here on our grant of certiorari. And that grant I think explicitly referred to, in fact, was based on the issuance by the Supreme Court of an opinion in Haring v. United States. I'm not sure that Haring has even been mentioned here. Is there anything in that case that helps you to support your position? Yes. There has been no allegation of recklessness, no allegation of omission of a material fact, no allegation of systematic recurrence of negligence. None of that has been alleged in this. There wasn't anything systematic about the negligence in Haring. In fact, Chief Justice Roberts specifically referred to isolated negligence in that one lapse in that case. So I don't see how Haring helps you. There was a mistake made by a clerk in the municipal office that had nothing to do with any inappropriate activity by a police officer. The police officer simply relied upon some inaccurate information that that clerk had conveyed. That is true. And the police conduct in this case was not reckless, mostly negligent. And there was no evidence of wrongdoing so that there would be a deterrent purpose served if this evidence did not come in. Nowhere in the decision of the Supreme Court, nowhere in the argument made by the defendant did they raise any issue of culpability of any sort on the part of the police. And again, the analysis is whether or not the exclusionary rule here would deter deliberate, reckless, or grossly negligent conduct, or in some cases, recurring or systematic negligence. Mr. Packer, may I ask you a question? What is the purpose of the search in child molestation cases like this one? Was it to support or to strengthen the child molestation case, or was it to find further evidence of other criminal activity? Do you know? I was not the original attorney on this case. But invariably, if a warrant like this is accepted, that's what happens. Yes, but what I would think is that the police officer, based upon probable cause and also working in sex crimes, she made what she believed to be a reasonable and intuitive inference. And there was no intent to mislead or anything else. And the fact that there are appellate courts that have held that such a nexus is intuitive, it would be very harsh to hold the officer to be able to question the unjudged. It is the role of the magistrate to make sure that the affidavit and the warrant conform to constitutional requirements. And if the magistrate did not do this, it's not the fault of the police officer. The police officer had the right in this case to rely on it. If I think that there is, as a police officer, there is a strong nexus between dealing in drugs and having guns to protect the dealing, does that mean that when I am searching for drugs, I can also, under your theory, start searching for guns? Maybe open drawers and searching pockets and so forth? Once again, with all due respect to the court, those are not the facts before us. Take it as a hypothetical. Well, I would rather not. What I would rather do is to— I'd rather answer the question that you wish I had asked you. Well, I do not think that—I believe that there has to be some sort of rational nexus that is recognized by law and by the courts. And if there is not, then quite obviously, neither the police officer nor the judge had a proper basis to regret it. So unless there is that, then no. We've got to go way over. I understand your argument, so maybe we should hear from Mr. Webber. You haven't by any chance ever read Bartleby the Scrivener, have you? I'm sorry? Did you ever read Bartleby the Scrivener? Dickens. Bartleby the Scrivener, the guy who sat in the corner, whenever he was asked anything, his response would be, Thank you, I'd prefer not. And I got the feeling from our questions that your answer was really, thank you, I'd prefer not, kind of like Bartleby. We ask hypothetical questions not to be difficult, but because we write precedential opinions, we're always concerned about the reach of those opinions and the implications of them. We can't write an opinion that says this law only applies to the case of people of the Virgin Islands versus Tydell John. That's why we're asking these questions, because if there's a rule of law sitting out there that says that, it's a rule of law, it has to be kind of – despite what many citizens might think, we have to be kind of careful about what we write in our opinions. I understand. Thank you very much for your time. Mr. Robertson, we have to give you a little more time, but hopefully you won't ask for equal time. I do. All right, okay. Good morning, Your Honor. Good morning. First time I'm here before you as an appellee. I've been here before before, but never as an appellee. First, I want to say that the suppression of the 10 notepads does not defeat the government's case, because the notepads were going to be used, if you remember the procedural pasture, as 404B evidence in the case against the appellees. And once they had filed – the government had filed a 404B motion to admit what we call prior bad acts, which are these notepads. But they wouldn't have found the notebooks, but for the search. Right, but the notepads are not part of the charges against the defendants. They only, according to the government, support the claim of prior bad acts. Why is that relevant to the issue? Well, because it doesn't defeat the government's case, and I don't think that the Leon case and the Herring case is totally different, because this evidence is collateral evidence. This is not evidence that the government needs to prove its case in chief. It's simply 404B evidence. Well, that's your view, but maybe they think differently. Maybe they think it is part of their case. But it doesn't include any of the so-called victims, and none of the victims' names. So that the only theory, according to what you're arguing, by which the government could get it into evidence at trial would be under 404B. Exactly. The other bad acts. Right, and then they have to go through a 404B analysis, and a 403 analysis, the relevance analysis as well. So it's not critical to the government's case in terms of whether it files or not. They could still prosecute the case, but they won't have the 404B evidence. And when they file a 404B motion to introduce prior bad acts, that is when I file the motion to suppress that evidence. Let's say they believe it's critical. Let me ask you, Mr. Webservice, because I was listening to Mr. Paquin's comment about the Eighth Circuit decision. And this relates, of course, to the good faith exception. And he cited this sentence from that decision, which says there is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. That's what the court said. And the court upheld, I believe, a search warrant in that case because of the relationship. And I would have to disagree. You disagree with this decision. I can understand that. I might disagree with it also. But it's a decision that's there and that is by a court of appeals. How can you say that the officers in this case were reckless when there is this division? Mr. Paquin says there's a division among the courts themselves. How can a police officer be reckless in seeking or enforcing a warrant that pretty much says the same thing? First of all, the affidavit in a warrant has no basis in fact for seeking. Yeah, but that's not the point. The point is, and it's a very difficult issue. It's raised in a very difficult context. And that's why I gave my hypothetical about the Mississippi State Trooper because it shows the danger to which common sense, what one may believe to be a common sense assumption, the mischief it can wreak under the Fourth Amendment and all other kinds of guarantees. But if the officer truly believed what she said, and there's nothing here to suggest she did not believe it, my guess is that the vast majority of citizens believe it. And it certainly has been testified to that it didn't seem false on Hodson and Corbett. The courts don't agree on this. If there is an assumption out there that child molesters also possess child pornography, how in the world would Leon allow the suppression of evidence seized in reliance upon a warrant which is issued with that kind of an affirmative affidavit? But if you want me to assume that that is true, on which I do not agree, it's true. Whether it's true or not, let's assume it's dead wrong, but a lot of people believe it to be so. The issue is not the accuracy, but whether or not the officer was making that assertion in good faith, relying upon a warrant issued upon that assumption in good faith. I have one passage from the officer's testimony on cross-examination which suggests to you that there was more than just that type of reckless conduct. Cross-examination, the suppression hearing? Yes, the suppression hearing. The question was, and this is on page 108 of the transcript, volume 2, 307-306. Where the question was, okay, this is me asking the question, what in the December 3rd search warrant signed by Judge Daniels gave you permission to pick up the 10 books found in his room? There was nothing there. Am I correct? Answer, well, we were looking for anything that would support the children's accusations of sexual activity. That is what we were looking for. And while we were searching the house, we brought up on these joiners, the first one, when I opened it, the first book in the house, and so forth and so forth. But I'm not sure that – I was concerned, too, about the application of the plain view doctrine, which is really not here. But when you pick up a notebook, that's one thing, plainly visible. When you start coming to it, that's not plain view anymore. But the notebooks are different than the assertions that were handed to Joseph. The statement that she made, and whether or not the search warrant was issued based in part upon that statement, whether or not officers who rely upon that warrant – because the officers who serve it are relying upon the warrant, and the judicial authority encompasses in the warrant. They're not relying upon Sergeant Davis' statement. As Mr. Bachman suggested, the whole purpose of the warrant is to have a mutual review, a magistrate. Listen to the evidence in support of the search warrant and view it in the house and determine whether or not it's probable fraud. If an officer relies upon that judicial finding, how can we say the officer is not actually in good faith under Leon, even if we were to conclude that part of what was put in the affidavit that got to that warrant is just blatantly wrong, even though most people, a lot of people believe it to be true? How can we say under Leon that's not a good case of a warrant for Leon? Under Leon? We're hearing. Well, okay. We've got to look at hearing as well. We've got to consider hearing whether or not it was after Leon. Applying the principles of Leon, you have the officer who applied for the search warrant, conducting the search, and a warrant must be particularized with respect to person and place. There's things that were listed in that warrant, a blue book and a red book and so forth and so forth. Those items were found where the warrants say would be found in the defendant's, the appellee's walk by. Those items were found according to the testimony of the law enforcement officer. However, even after they were found and in the officer's possession, here's where the officer says, we continue to search for anything, anything that would support the accusations. Well, you're not saying, please find some evidence they have to stop and do any other evidence? Well, a warrant has to be particularized as to the thing and person and that you're searching for. Well, she's looking for anything that's related to the child molestation charge. If this police officer were not in the Third Circuit but were in the Sixth Circuit, would I be correct in saying your motion for suppression would be denied? I don't think so. Well, that circuit found that there is a connection between molestation and child pornography. So how could you suppress child pornography if in that circuit there is a relationship and they found it? Well, in this case, no child pornography was found here. I'm sorry? No child pornography was found. We just, and the excerpts of the ten notebooks that were suppressed by the lower court had nothing to do with child pornography. It was a journal that the defendant kept and the government took the position that they're going to use this journal or excerpts from these journals as follow-up for B evidence to show that- What was suppressed, Mr. Webster? The ten notebooks, ten notebooks that were supposedly journals that the appellee kept many years ago. He was a teacher back in St. Vincent, and he was a teacher for a very long time. But didn't some of the children supposedly say that he made notes and wrote in the notebook and described the notebook? Yes. Those notebooks were in fact seized and they were not suppressed, right? No, they were not suppressed. That was the what, the red and blue notebook or something? Right. They were found early. They're okay. They're not subject to- No, they're not subject to suppression. They were found very early in the search, and those things were specifically set forth in the affidavit and in the warrant. Is that right? Are you saying that this relationship between child pornography and child molestation is totally besides the point? Well, no. I think there is- I've done a lot of child molestation case, and I've done one child pornography case, and I don't see any relation between- Let's talk from my experience. The child pornography case I had, the person who was doing it on video never had any contact with a child. I'm not sure one thing in the Virgin Islands is a sample broad enough to allow us to make many conclusions about that. Yeah, maybe it doesn't go both ways because you have child pornography doesn't mean you molest, but maybe it does work the other way. If you molest, then maybe you do have a tendency to accumulate pornography. I've done a lot of those cases, and I've never seen a case with child molestation where child pornography was ever incriminated. I think they're two different aspects. Well, yeah. The Sixth Circuit case is the case. Yes, but as I listen to the Chief Judge McGee talks about common sense, as I get older, I'm getting to learn that common sense is not as common as people think it is. Well, we're sensitive about that. Yeah. So just to say it's common sense I think is not enough. I think there has to be something more. Maybe you can satisfy my concerns. It's that if the Sixth Circuit says this, and that's pretty much what the officer in this case did, made this sort of connection, how can we say that that officer was reckless? How can we say that this motion or that the officer is not entitled to a good faith exception? How can we say that the officer was grossly negligent if there is a court of appeals that essentially supports her view? This is the Eighth Circuit. I said the Sixth. I stand corrected. It's the Eighth Circuit. Yeah. The Sixth Circuit was a Hobson case. Yeah, no, no, that's fine. Yeah, no, I'm talking about the Circuit Division, and it is the Eighth Circuit that goes the other way. The good faith exception under Leon or even under hearing is that it's incumbent on the officer executing the sort warrant. This case would be more like the Second Circuit also pretty much allows the good faith exception. Right. It doesn't apply because child pornography and child molestation are two separate things. But I think this circuit, I mean, the Supreme Court has said that it's incumbent on the officer executing the sort warrant to ensure that the sort is fully authorized and lawfully conducted, and that the grove is, as they say, as they pronounce the grove, G-R-O-H versus Ramirez, which is a 2004 Supreme Court decision. And you see it from her own statement. No, it's left to this case. Well, her case is making bad law. On the one hand, if we were to conclude that the good faith exception should apply here, we're writing an opinion that is tantamount to authorizing the old general warrants in sex crime cases. On the other hand, if we say the good faith exception does not apply here, we have to dance around the language of Leon and even dance around the purpose for the rule because you have an affidavit, a search warrant, which is supported by an affidavit that I think we could all agree is a warrant in an adversarial setting, makes a vermince of fact that a lot of people would agree with. There's nothing that the Sergeant Jordan did here that was suggested to have been dishonest or reckless or malicious. She genuinely believed there was a correlation. She may be right. She may be wrong. So if we say that the evidence is suppressed, how in the world can we say that on the one hand, given the concerns of Leon? On the other hand, if we say that the evidence is not suppressed, we ask for an opinion that, as I said, it authorizes general search warrants in sex cases. Because in any sex case, there could be a common sense association that the rapist will have – well, the rapist in child pornography is probably not, but certainly child monetization and child demonetization, that correlation will be there. And if the opinion is not careful, it seems to me we do come out of here with an authorization for a general search warrant in certain kinds of crimes. The other one would be, as Quente mentioned, guns and drugs. We authorize general searches in drug cases. And once you do that, then plain view pops in. So if the officer is going to say, well, I was looking for evidence of X, even though he wasn't charged with X, crime X usually – people who do Y also usually do X. So we were looking for evidence not of Y but of X. And while we were looking for evidence of X, because we had a right to do, because of this common sense association, we happened to be in a situation where we saw evidence M. Plain view comes in. And you basically opened up the inside of one's home to a general, unrestricted search based upon a correlation which may not exist in fact at all. It's a very, very – at least for me, it's a very, very difficult case. I think this is the exact type of case that the exclusionary rule was designed for, to prevent. How? How was the exclusionary rule designed to suppress evidence which is obtained in reliance on a warrant which is generated by a police officer making a good faith representation of an association that she believed in which most people probably would agree with and courts agree with? How do we – what's the societal cost of that on the one hand, given the suppression of that kind of evidence, which the Supreme Court is obviously concerned about? We've got the societal cost of suppressing evidence, which in some cases – not this case, but in some cases may allow somebody to walk because then you're going to hurt somebody else. On the flip side of that, if you don't suppress it, you're not being true to the language of mankind. What? If you do suppress it, you're not being true to the language of mankind. I'm not sure how I follow you in saying that this is an atypical neon case. Well, I'm not sure from her own testimony that she acted objectively when she applied for the warrant and when she executed the warrant. Are you suggesting she lied and she really did not believe the association existed? But she didn't articulate it in the affidavit. What does the affidavit say? What did she say in the affidavit? The affidavit basically recites – Not basically.  Oh, yeah. Oh, yeah. JA1-0173. Yeah, it's kind of long. It has like up to U, the letter U. It's not numerical. It's up to the letter U. I believe, or even further than that, let me see. Actually, up to V. Paragraph V. But there's nothing – I don't know exactly what's happening. Use the reference I read before when Mr. Paquin was at the podium. I'll repeat it. That persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, photographs, computer files in their homes and on their computers. You're looking at paragraph U. I'm looking at it now, too. That's what she concluded without – But she does not include an averment in the affidavit, does she, regarding propensity? That is, suggesting – obviously, there's no suggestion of any social science supporting a connection between child molestation and hoarding child pornography anywhere in the affidavit. And she doesn't even say, based on my experience, this is a fact. Can we maybe take a slightly different contrarian view? Supposing we agree with you that there is no connection and that there is a defect in this warrant. But then we agree with Mr. Paquin and say, however, there was a good faith exception in this case because there was no suggestion that she was reckless. Doesn't that mean that we have decided this case is okay, but hereafter, all other cases, the police officers will know that there's no connection and hence we're not creating havoc? The next time it's reckless. Well, I think if she's grossly negligent, unintentional, and while she does not have to reach to the level of recklessness, I think – She could have been crossing the eminent discretionary. She could have said, you stated in the affidavit that, quoting the affidavit, those persons who commit sexual offense crimes involving children customarily hide evidence of such offenses, including notes, photographs, and computer files. What could you base that on? Now, there may be very sound reasons why an offense attorney would never lay down and say to an officer, kill me, because you could really get blown away with her answer to that question. But nevertheless, it was an opportunity to test the basis of her knowledge. That's true. But we test the strength of the – we test the validity of the warrant, which the burden was then on the government, and they never came up with anything to meet that burden. Incidentally, Mr. Webster, it's not been proven that there is no connection. It's just not proven that there is. Right, exactly. And that burden is with the government. We can't say that there's never a connection. That's it, right. Exactly. That's subject to proof, right? It just wasn't shown in this case. I gather that you're arguing. It wasn't shown in this case. I think it is the government's burden, not the defense's burden. I think our burden shows that at least on class examination, they were just doing a sort of any and everything, without regard to what was in the warrant, because they already had specifically what they came for in their hands. When they continue to find these 10 notebooks – and again, the 10 notebooks, suppression of those notebooks doesn't dispose of the government case because they are not a part of the count. They're just – and I don't see how they're going to come in under 404B anyway. But they wanted to put them in under 404B, and that's when we raised the motion to suppress them completely. So that's – If it doesn't hurt the government's faith, how does the government take it as serious? Why is it as fully irreliable? Well, it shouldn't – well, yeah. And that's another question on whether or not this case should be – You're just making a question. It hadn't been raised. It's not in the written certiorari, but they hadn't thought about it as they read the materials. But if – and it does seem that you're right, that the computer files are totally irrelevant to the prosecution and some of the notebooks were totally irrelevant to the prosecution. If it really is not material to the government's faith, then why is there an interlocutory appeal to which you have no jurisdiction? And that's another – I hope that Mr. Pakman will address that. I had, in fact, wanted to ask about that because the government brief actually argues 3731 to some extent, which, speaking only for myself, did not seem to be applicable. This seems – this is an appeal that seems to be based on 1613. And I had been following up on Mr. Chayky's comments about the way the government addressed that. All right. That's my argument, sir. Thank you very much. Thank you. Did you say practical rebuttal? I don't remember. Yes, I did. Did you? Hi. Hi. First, I would like to apologize for not answering hypothetical questions directly. This is my first time before in a tele-panel. I apologize for that forthcoming. I just want to make one or two points before addressing jurisdiction. First, I believe that this panel has the opportunity to put this matter to rest, essentially take a position on this issue. I think that under Haring and Leon, that given the case law and given that there was no definitive decision in the Third Circuit, the police officer acted in good faith reliance on the judge's assurance of the warrant. But I believe that the court has raised the concerns raised by the courts are important. And this would be a way to state the position of this circuit on that question. Another matter is that I believe that Mr. Webster said that the burden is on the government to show that the officer acted in a reckless manner. However, the Supreme Court in Franks v. Delaware held that the opponent to a search warrant bears the burden of proving by the preponderance of the evidence that the affidavit contained deliberate or reckless false information or material omission. I'm going to ask you this. The computer files in question, I guess they were going to come in as 404-B. I'm not sure if they ever came in or not. No. No, they didn't come in there to suppress. That is correct. How did that hurt your case for the charges against him which dealt with sexual abuse, child molestation? He wasn't charged with child pornography. How did the suppression of the pornographic stuff on the computer, how did that interfere? Were you a prosecution of him for a completely different crime? The decision to follow through with the appeal was made by the prosecuting attorney and the attorney general. They believe that providing that in addition to the testimony of children since I believe there is a general thought... I never had a detailed conversation but my understanding was that the office believed that it would bolster its case. If you read our 404-B cases, that is exactly what we say 404-B is there to go against. That is exactly what this kind of evidence is not to be used for. I'm sure the guy is a dirty guy and a pervert and therefore the case may not be telling the truth. I'm not at all sure there was jurisdiction. If that is how the suppression hurt the government's case, I understand that is conjecture on your part. But on record you weren't the decision maker. No, of course not. I don't have a hard time seeing any final order that is appealable under any of our statutory authorities. Thank you very much. We will take you back under authority. Thank you. Mr. Backlund, we hope to see you back. It was your first time and hopefully it will be your last time. Thank you very much. Thank you. Thank you.